**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Bocchi Americas Associates, Inc. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-02411 |
| | § | |
| Commerce Fresh Marketing Inc.; | § | |
| Diran A. Elsaifi | § | |
| | § | |
| Defendants. | § | |

FINDINGS OF FACT

1.  Plaintiff Bocchi Americas Associates, Inc., ("Bocchi") is a Delaware corporation, doing business in the Southern District of Texas. It is licensed by the United States Department of Agriculture to operate in the interstate produce business under 7 U.S.C. § 499 (e)(c), the Perishable Agriculture Commodities Act ("PACA"), a Federal statute which regulates interstate trade and commerce in fresh and frozen fruits and vegetables.

2.  Defendants are CFM Marketing, Inc., ("CFM") a Texas corporation, and Diran A. Elsaifi ("Elsaifi") an individual domiciled in Texas. CFM was licensed as a commission merchant or dealer, under the PACA, during the relevant period.

3.  Defendant Diran A. Elsaifi was and is president and the sole stockholder in CFM.

4.  Venue and jurisdiction are proper in this court as both Plaintiff and Defendants do business in the Southern District of Texas, and the facts underlying this dispute occurred in whole or in part in this district, as well.

5. On November 16, 2004, all parties consented to proceed before a United States magistrate judge, for all further proceedings, including trial and entry of final judgment, under 28 U.S.C. § 636 (c). (Docket Entry # 16). All parties have submitted to the jurisdiction of this court.

6. Between December 10, 2002, and June 27, 2003, Bocchi sold and delivered to CFM twenty shipments of fresh fruit. CFM accepted those shipments, but to date, has not paid fully on its debt.

7. Bocchi invoiced CFM for the fruit on the same date that the commodities were shipped.

8. An agreement on the final prices owed for five or six of those twenty shipments, and the total amount due from CFM, was not reached until shortly before trial. (Tr. Vol. 1, pp. 20-21).

9. The parties have stipulated that CFM owes Bocchi the sum of $123,000.00 for the produce which was sold and delivered, by Bocchi to CFM, but for which payment is still outstanding.

10. Bocchi's invoices contained a preprinted paragraph on the bottom of each form, which stated the following:

> "The perishable agriculture commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act of 1930 (7 U.S.C. 499 e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

(Plaintiff's Ex. A 1).

11. On June 27, 2003, CFM sent a $2,000.00 check to Bocchi along with a letter signed by Elsaifi, as president of CFM, which stated that the payment was to be applied to CFM's account, and that "[p]ursuant to our agreement, Bocchi Americas, Inc. will accept partial payments to be

applied towards this account, on a weekly basis until the balance of $103,132.85 is paid.  Should the above correctly reflect the terms of our payment agreement, please deposit the check, apply the amount against the account balance, and send a new statement reflecting the new balance due on the account."

12.     On or about July 10, 2003, Plaintiff received and deposited CFM's check dated June 27, 2003 which was referenced as a partial payment of $2,000.00 against invoice no. 1250-37.

13.     Although Bocchi denied receiving Elsaifi's June 27, 2003 letter addressed to Bocchi's "Account's Receivable Department," the parties routinely did business under the principle that if a proposal met with no response, agreement to it was presumed.

14.     It was standard practice and the usual course of business for Bocchi and CFM to consider a failure to respond to an offer as an acceptance of its terms.

15.     Between June 27, 2003, and October 1, 2004, CFM made occasional payments "on account" by checks in the amount of $2,000.00.

16.     Bocchi refused to extend further credit to CFM after the June 27, 2003, shipment. At the time the credit was extinguished, CFM was 33 1/3 % over its credit limit.

17.     On December 9, 2003, Tom Leonardi sent a facsimile to Elsaifi in which he listed payment terms for outstanding invoices dated December 10, 2002, January 17, 2003, and February 13, 2003.

18.     Bocchi orally agreed to extend the time for payment of CFM's invoices for more than thirty days after the delivery of the produce reflected by the invoices.

19.     CFM paid Bocchi $32,000.00 over a period from June 2003, to December 2004. These payments consisted of checks for $2000.00 each on 6/27/03, 11/24/03, 12/30/03, 1/26/04,

2/16/04, 4/26/04, 5/24/04, 7/26/04, 8/31/04, 9/13/04, 10/1/04, and checks for $5000.00 each on 11/1/04 and 12/20/04.

20. On July 16, 2004, Tom Leonardi sent a facsimile to Elsaifi in which he stated "Don, you have promised to pay complete invoices in full within a year's time..." This statement reflects a prior oral agreement that was not subject to the statute of fraud.

21. Bocchi agreed, through various writings sufficient to comply with the statute of frauds, to extend the time for payment of CFM's invoices for more that thirty days after the delivery of the produce reflected by the invoices.

22. On November 10, 2004, CFM and Bocchi entered into a formal written agreement for CFM to pay off the past-due invoices.

23. Defendants made the first two payments of $5,000.00 each by checks specifically allocated as payments due under the November, 2004 agreement. Defendants then defaulted, and never made the balance of the promised payments.

24. Plaintiff concedes that in November 2004, the parties "entered into a contingent settlement agreement seeking to avoid further costs in this action by agreement on both an amount due and a schedule of payments." (Plaintiff's Post Trial Memorandum of Law, p. 4). This agreement, whether allegedly "contingent" or not can be reasonably viewed as akin to the agreement entered in *Patterson*, which was found to result in forfeiture of the PACA trust. The court concludes that the same result obtains here, for the reasons addressed by the Seventh Circuit in its decision. *Patterson Frozen Foods, Inc., v. Crown Foods, Int'l, Inc*., (7th Cir. 2002).

25. Bocchi had no contractual relationship with Elsaifi.

4

26. Bocchi is entitled to recover reasonable attorney's fees from Defendant CFM. The court finds that a reasonable fee award in this case is $38,400.00, and $7,500.00 in the event of an appeal.

27. Any finding of fact deemed to be a conclusion of law is hereby adopted as such.

28. The court's memorandum opinion is incorporated by reference so that all legal findings not repeated here are adopted with these itemized conclusions of law.

The Clerk shall enter this order and provide a true copy to all counsel of record.

SIGNED at Houston, Texas this 6th day of October, 2006.

MARY MILLOY
UNITED STATES MAGISTRATE JUDGE